# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

Jane Doe,

    Plaintiff,

vs.

Anoka County, the Anoka County Sheriff James Stuart in his official capacity, and Detective Larry Johnson, now retired, in his individual and official capacity,

    Defendants.

Court File No.:

**COMPLAINT**

**JURY TRIAL DEMANDED**

For her complaint against the above-named defendants, Jane Doe, through her attorneys, states and alleges:

## STATEMENT OF CLAIMS

1. Jane Doe was sexually assaulted in Anoka County, Minnesota in 2004. She was 14 years old.

2. After the assault, she underwent an invasive medical examination to provide evidence for a rape kit.

3. The rape kit was submitted to the Anoka County Sheriff's Office.

4. Detective Larry Johnson was assigned to Jane Doe's case.

5. The Anoka County Sheriff's Office and Detective Johnson, however, failed to investigate Jane Doe's assault, including, but not limited to submitting the rape kit for testing.

6. Contrary to what happened, Detective Larry Johnson told Jane Doe's

mother, her legal guardian at the time, that no DNA was obtained from the rape kit.

7. The Anoka County Sheriff's Office implemented and established a custom and practice of routinely failing to submit rape kits for testing.

8. The Anoka County Sheriff's Office is overseen by Anoka County.

9. Under a law passed by the Minnesota Legislature, in 2015 the Anoka County Sheriff's Office provided information to the Minnesota Bureau of Criminal Apprehension demonstrating it had almost 500 untested rape kits in its possession.

10. The Anoka County Sheriff's Office's failure to test almost 500 rape kits was further demonstrated by it being awarded a federal grant to test its untested rape kits, covering at least a 15 year period in the past.

11. Jane Doe's rape kit had not been tested for approximately 14 years, contrary to Detective Johnson's statement.

12. When Jane Doe's rape kit was finally tested in 2020 it yielded DNA evidence which ultimately served as a basis for bringing criminal charges against the man who assaulted her in 2004.

13. Jane Doe did not become aware, nor could she have been aware, of the Anoka County Sheriff's failure to test her rape kit until May 2020.

14. The full extent of the Anoka County Sheriff's Office's failure to investigate sexual assault cases is unknown, except that it was the office's custom and practice to not test the rape kits.

15. Defendant, Larry Johnson, at the time, a deputy of the Anoka County Sheriff's Office, lied about having Jane Doe's rape kit tested and that no DNA was

discovered. In reality the rape kit had not been tested.

16. Detective Johnson's unlawful conduct is imputed on Anoka County and the Anoka County Sheriff's Office.

17. Jane Doe is suing under 42 U.S.C. § 1983 to hold defendants accountable for their unlawful actions, to seek justice for herself, and to prevent similar unlawful actions from occurring in the future.

18. Jane Doe seeks damages related to the defendants' unlawful conduct in failing to test the rape kit and then lying about the test results violating her rights under the equal protection clause of the United State Constitution and Article 1 Section 2 of the Minnesota Constitution, the Minnesota Human Rights Act, and Minnesota State tort laws.

## **JURISDICTION AND VENUE**

19. This Court has jurisdiction over this federal question matter under 28 U.S.C. §1331, the civil rights statute 28 U.S.C. § 1343, 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

20. This Court has supplemental jurisdiction over the pendent state law claims under 28 U.S.C. § 1367.

21. This action arises under the U.S. Constitution, as applied to state and/or local authorities under 42 U.S.C. § 1983.

22. Venue is proper in the District of Minnesota under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district, or a substantial part of the property that is the subject of this action is situated in this district.

## THE PARTIES

23. Jane Doe is now an adult female resident of Hennepin County, Minnesota. When Jane Doe was sexually assaulted she was a 14 year old resident of Anoka County. Jane Doe files this case under the pseudonym "Jane Doe" to avoid public disclosure of intimacy to members of her family, friends, and acquaintances who do not know the full details of her sexual assault.

24. Upon information and belief, all defendants know the identity of Jane Doe.

25. Defendant James Stuart is the Sheriff of Anoka County. He is sued in his official capacity under Minn. Stat. § 466.01 *et seq.* and other applicable laws.

26. Detective Larry Johnson, at all relevant times, was a detective in the Anoka County Sheriff's Office. He is sued in his personal and official capacities under Minn. Stat. § 466.01 *et seq.* and other applicable laws. At all times for this complaint, Larry Johnson was a law enforcement officer, agent and/or employee of Anoka County and was, at all relevant times, working as an on- or off-duty licensed Minnesota peace officer acting under color of state law and within the scope and course of his official duties and employment as an officer of the Anoka County Sherriff's Office.

27. Anoka County is a municipal and political subdivision of the State of Minnesota that can sue or be sued in its own name.

28. The Anoka County Sheriff's Office is a law enforcement agency under Anoka County's authority.

## BACKGROUND

29. In 2004 when Jane Doe was sexually assaulted she was only 14 years old.

4

30. She told her mother about the sexual assault and her mother took her to a hospital.

31. At the hospital, Jane Doe underwent an intrusive medical examination which included taking bodily fluid samples from her. This evidence was used to prepare the rape kit.

32. Doe also reported the assault to the Anoka County Sheriff's Office.

33. Jane Doe provided a statement to the Anoka County Sheriff's Office and identified her assailant.

34. Because Jane Doe was a minor, the Anoka County Sheriff's Office also spoke to her mother who was her legal guardian.

35. The rape kit was provided to the Anoka County Sheriff's Office.

36. Detective Larry Johnson was assigned to Jane Doe's case.

37. A criminal case was initiated against the assailant for sexually assaulting Jane Doe.

38. In 2004, Detective Larry Johnson told Jane Doe's mother that no DNA was found in the rape kit.

39. The criminal case against the assailant was dismissed for reasons unrelated to the purported lack of DNA evidence.

40. In fact, Jane Doe's rape kit was not tested.

41. The Anoka County Sheriff's Office took no further action on Jane Doe's case and kept the rape kit in storage for the next 15 years.

42. In 2015, the Minnesota Legislature passed a bill for an accounting of untested rape kits.

43. The bill required that all publicly funded forensic laboratories that test rape kits and sheriff offices to complete an inventory of untested rape kits in their possession and submit that information to the Minnesota Bureau of Criminal Apprehension.

44. The bill applied to untested rape kits collected before July 1, 2015, including Jane Doe's rape kit.

45. The Anoka County Sheriff's Office submitted to the Minnesota Bureau of Criminal Apprehension the information required by the bill.

46. According to its report, the Anoka County Sheriff's Office had 495 untested rape kits.

47. Since at least 2004, the Anoka County Sheriff's Office engaged in a policy, practice, or custom of failing to submit the rape kits for testing.

48. According to the information submitted to the Minnesota Bureau of Criminal Apprehension, the Anoka County Sheriff's Office had one of the highest numbers of untested rape kits in the State of Minnesota.

49. Upon information and belief, most, if not all, of the victims of sexual assault that provided evidence for the rape kits were women and girls.

50. In 2018 the Anoka County Sheriff's Office was awarded a federal grant under the Sexual Assault Kit Initiative to test its untested rape kits.

51. One of the rape kits tested with the proceeds from this grant was Jane Doe's rape kit.

52. When the kit was finally tested, it did, in fact, contain DNA evidence of the man that Jane Doe had told the Anoka County Sheriff's Office sexually assaulted her in 2004.

53. From 2004 to the time the kit was tested, Jane Doe's rape kit was in the sole possession, custody and control of the Anoka County Sherriff's Office.

54. In 2020, Jane Doe was informed that her that the rape kit from the 2004 assault had been tested and was being used in a prosecution of the man she accused of sexually assaulting her because the DNA was a match.

55. The criminal prosecution was reasserted against the assailant in Anoka County District Court.

56. Before 2020, the Anoka County Sheriff's Office's policy, practice, or custom of not investigating sexual assaults against women or girls was not disclosed publicly.

57. Jane Doe did not learn that the Anoka County Sheriff's Office, for at least 14 years, conducted no meaningful investigation into its systematic failure to investigate sexual assaults against women and girls, including her own sexual assault.

**Count 1 – Violation of Equal Protection on the Basis of Sex**
*Against Anoka County and the Anoka County Sheriff*

58. Jane Doe incorporates all previous paragraphs of this complaint as though fully stated herein.

59. At all times relevant to this matter, Anoka County and the Anoka County Sheriff's Office acted under color of state law.

60. All or most victims from whom the evidence was collected to create rape kits for the Anoka County Sheriff's Office were women or girls.

61. At all times relevant to this matter, Anoka County and the Anoka County Sheriff's Office followed an unwritten and ongoing policy or custom of responding differently and affording less protection to sexual assault victims, who were, almost exclusively women and girls.

62. Basic investigatory steps were not taken for sexual assault cases as a matter of course, as they were for other cases.

63. That the Anoka County Sheriff's Office systemically investigated other crimes more thoroughly is evidence of its policy, practice, or custom to give woman and girl sexual assault victims less protection than of other crimes because the Anoka County Sheriff's Office, for years, simply did not investigate such cases.

64. In Jane Doe's case, not only was her rape kit not tested, the case was ultimately dismissed because no one believed that the assailant she identified had sexual assaulted her, notwithstanding objective evidence being provided and available in the rape kit.

65. Anoka County and the Anoka County Sheriff's Office knew that sexual assault victims provided evidence to the Anoka County Sheriff's Office, almost 500 kits were untested, but as a custom and practice, the Anoka County Sheriff's Office took no steps to reasonably investigate sexual assault cases.

66. Upon information and belief, the failure of the Anoka County Sheriff's Office to not investigate or pursue sexual assault cases was not an oversight, but a conscious choice.

67. In Jane Doe's case where she provided the name of the assailant and submitted evidence for the rape kit, the Anoka County Sheriff's Office failed to investigate the case.

68. The Anoka County Sheriff's Office's policy, practice, or custom of failing to investigate sexual assaults committed against woman and girls was done with a discriminatory motive.

69. As overseen by Anoka County, the Anoka County Sheriff's Office's custom and practice is sex or gender based and had adverse effects on women and girls, which reflects discrimination based on sex, gender or both.

70. The large amount of untested rape kits, alone, demonstrates the policy of Anoka County and the Anoka County Sheriff's Office to discriminate against sexual assault victims adversely affecting women and girls.

71. When combined with the other facts alleged in this complaint, the only conclusion to be reached is that Anoka County Sheriff's Office, as overseen by Anoka County, adopted a policy of not investigating crimes which almost exclusively affect women and girls, unlike other crimes for which the victims are not comprised almost entirely of women or girls.

72. The systematic disregard of duty by Anoka County and the Anoka County Sheriff's Office toward sexual assault victims cannot be explained as an uneven

allocation of police resources because the impact of the conduct exclusively harmed women and girls. Instead, the approach to sexual assault cases must be construed as the selective intentional withdrawal of police protection for sexual assault victims because of their sex, gender or both.

73. In addition to this unconstitutional practice, Anoka County and the Anoka County Sheriff's Office, with deliberate indifference, failed to train its officers, deputies, and detectives about the rights of sexual assault victims with whom the Anoka County Sheriff's Office came into contact, including, but not limited to, Jane Doe.

74. The deliberate indifference and willful and wanton conduct by Anoka County and the Anoka County Sheriff's Office created a danger of an increased harm to female victims of sexual assault, including Jane Doe, by failing to investigate sexual assault crimes.

75. The policies identified above of Anoka County and the Anoka County Sheriff's Office have no rational basis and bear no substantial relationship to any important government objective.

76. Anoka County and the Anoka County Sheriff's Office followed their discriminatory policy, practice, or custom in Jane Doe's sexual assault. In doing so, they violated Jane Doe's constitutional rights.

77. Anoka County and the Anoka County Sheriff's Office at all relevant times to this matter were aware that the Anoka County Sheriff's Office investigation of sexual assault cases was practically non-existent and was materially worse than its efforts to investigate other crimes.

78. Anoka County and the Anoka County Sheriff's Office at all relevant times to this matter knew that their failure to investigate sexual assaults had a disparate impact on women and girls, who comprise most, if not all, of the county's sexual assault victims.

79. Anoka County and the Anoka County Sheriff's Office took no meaningful steps to change the disparity in the way the Anoka County Sheriff's Office investigated sexual assaults.

80. Anoka County and the Anoka County Sheriff's Office knew the disparate treatment and its impact on women and girls and knew they did not nothing meaningful to rectify the problem.

81. The only conclusion to be drawn by the facts alleged in this complaint is that the failure of Anoka County and the Anoka County Sheriff's Office to make any effort to alleviate the harms being done to sexual assault victims, like Jane Doe, is that the failure was intentional and motivated by Jane Doe's sex, gender or both, and the sex, gender or both of other sexual assault victims.

82. Jane Doe's injuries result from an unconstitutional, discriminatory municipal policy, practice, or custom by Anoka County and the Anoka County Sheriff's Office.

83. The constitutional injury inflicted on Jane Doe was caused by persons with final policymaking authority for Anoka County and the Anoka County Sheriff's Office.

84. Anoka County and the Anoka County Sheriff violated 42 U.S.C. § 1983 and deprived Jane Doe of her rights under the Equal Protection Clause of the Fourteenth

Amendment of the United States Constitution and under Article I Section 2 of the Minnesota Constitution.

85. As a direct and proximate result of the actions of the Anoka County Sheriff's Office and Anoka County they are jointly and severally liability for the damages Jane Doe has suffered in an amount in excess of $50,000.00 to be determined with specificity at trial together with interest, costs and disbursements allowable by law.

**Count 2 – Violation of the Minnesota Human Rights Act**
**(Minn. Stat. § 363A.12 subd. 1)**
*Against Anoka County Sheriff and Anoka County*

86. Jane Doe incorporates all previous paragraphs of this complaint as though fully stated herein.

87. The Anoka County Sheriff provides a public service as defined by Minn. Stat. 363A.03 subd. (35).

88. Anoka County provides a public service as defined by Minn. Stat. 363A.03 subd. (35).

89. The Anoka County Sheriff's Office has a responsibility to provide public safety, which includes, but is not limited to investigating crimes and running a forensics lab.

90. Anoka County oversees the Anoka County Sheriff's Office.

91. As overseen by Anoka County, the Anoka County Sheriff's Office's custom and practice is sex or gender based and had adverse effects on women and girls, which reflects discrimination based on sex, gender or both.

92. As overseen by Anoka County, the Anoka County Sheriff's Office had an unfair discriminatory practice toward sexual assault victims, who are mostly women and girls, in accessing full utilization of and benefiting from its public service.

93. As overseen by Anoka County, the Anoka County Sheriff's Office had an unfair discriminatory practice of routinely failing to test rape kits, as evidence by the almost 500 untested rape kits it had in its possession when it received the federal grant to test its untested rape kits.

94. There can be no other reason the Anoka County Sheriff's Office routinely failed to test rape kits and investigate sexual assault than it was discriminating against sexual assault victims because of their sex, gender or both.

95. Anoka County and the Anoka County Sheriff's Office followed their discriminatory policy, practice, or custom in Jane Doe's sexual assault. In doing so, they violated Jane Doe's rights under the Minnesota Human Rights Act.

96. Jane Doe is one of the sexual assault victims who the Anoka County Sheriff's Office discriminated against because it failed to investigate her sexual assault or test the evidence she provided for the rape kit.

97. Jane Doe was discriminated against in access to, full utilization of and the benefit of the public services that were supposed to be provided by the Anoka County Sheriff's Office and Anoka County.

98. Anoka County and the Anoka County Sheriff's Office at all relevant times to this matter knew that their failure to investigate sexual assaults had a disparate impact

on women and girls, who comprise most, if not all, of Anoka County's sexual assault victims.

99. As a direct and proximate result of the actions as set forth above, Anoka County and the Anoka County Sheriff's Office are jointly and severally liability for the damages Jane Doe has suffered in an amount in excess of $50,000.00 to be determined with specificity at trial together with interest, costs and disbursements allowable by law.

**Count 3 – Failure to Train**
*Against Anoka County Sheriff'*

100. Jane Doe incorporates all previous paragraphs of this complaint as though fully stated herein.

101. The Anoka County Sheriff's Office training practices were inadequate in investigating sexual assaults.

102. The Anoka County Sheriff's Office knew its training practices were inadequate and reflects a deliberate or conscious choice not to investigate sexual assaults evidenced by the almost 500 untested rape kits it had in its possession.

103. The Anoka County Sheriff's Office was deliberately indifferent to the rights of sexual assault victims, which are almost exclusively women or girls.

104. The Anoka County Sheriff's Office was deliberately indifferent to the rights of women and girls in adopting its training practices and procedures.

105. The Anoka County Sheriff's Office knew it was indifferent to the rights of woman and girls because it had one of the largest amounts of untested rape kits in the Minnesota.

106. Failing to train its officers and detectives to investigate sexual assaults is a

deliberate choice by the Anoka County Sheriff's Office.

107. As a direct and proximate result of the defendant's actions set forth above, Jane Doe has suffered damages in an amount in excess of $50,000.00, to be determined with specificity at trial together with interest, costs and disbursements allowable by law.

### Count 4 – Negligence
*Against Anoka County Sheriff and Larry Johnson*

108. Jane Doe incorporates all previous paragraphs of this complaint as though fully stated herein.

109. The Anoka County Sheriff and Detective Larry Johnson had a duty of reasonable care to investigate sexual assault cases brought to them.

110. Jane Doe was a sexual assault victim who sought help from the Anoka County Sheriff

111. Larry Johnson was the detective assigned to Jane Doe's case.

112. The Anoka County Sheriff's Office breached its duty to Jane Doe because it failed to investigate her case and have her the rape kit tested.

113. Larry Johnson breached his duty to Jane Doe because he failed to investigate her case and have her rape kit tested.

114. But for breaching their duties, Jane Doe would not have suffered embarrassment and mental and emotional distress due not only to being sexual assaulted but also that none of the defendants believed her.

115. As a direct and proximate result of the Anoka County Sheriff's Office and Larry Johnson's actions as set forth above, they are jointly and severally liability for the

damages Jane Doe has suffered in an amount in excess of $50,000.00 to be determined with specificity at trial together with interest, costs and disbursements allowable by law.

### Count 5 – Intentional Infliction of Emotional Distress
*Against Anoka County Sheriff and Larry Johnson*

116. Jane Doe incorporates all previous paragraphs of this complaint as though fully stated herein.

117. The Anoka County Sheriff's Office and Larry Johnson as its employee, represented that Jane Doe's rape kit had been tested and no DNA evidence was found.

118. Their representation to Jane Doe's legal guardian was not only false, it was extreme and outrageous because the rape kit had, in fact, not been tested.

119. The Anoka County Sheriff and Larry Johnson recklessly disregarded that Jane Doe had been sexual assaulted and told her mother was no DNA evidence in the rape kit despite not testing it.

120. Jane Doe suffered severe mental and emotional distress because of the intentional conduct by the Anoka County Sheriff and Larry Johnson.

121. As a direct and proximate result of the Anoka County Sheriff and Larry Johnson actions they are jointly and severally liability for the damages Jane Doe has suffered in an amount in excess of $50,000.00 to be determined with specificity at trial together with interest, costs and disbursements allowable by law.

WHEREFORE, Jane Doe requests that the Court enter an order for judgment as follows:

1. For Jane Doe and against Anoka County, the Anoka County Sheriff's Office and Larry Johnson, jointly and severally, in an amount in excess of $50,000.00 to be determined with specificity at trial;

2. Awarding Jane Doe punitive and other exemplary damages from all defendants, jointly and severally;

3. Awarding Jane Doe her attorney fees and expenses under 42 U.S.C §1988 and Minn. Stat. 363A.33 subd. 7;

4. Awarding Jane Doe her costs and disbursements including prejudgment interest; and

5. Other just relief.

Dated: December 10, 2021          **LIVGARD & LLOYD, PLLP**

By s/ Adam C. Hagedorn
   Charles J. Lloyd, #174257
   Adam C. Hagedorn, #399050
PO Box 14906
Minneapolis, MN 55409
Telephone: (612) 825-7777
Facsimile: (612) 825-3977
chuck@livgard.com
adam@livgard.com

**ATTORNEYS FOR JANE DOE**